```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION

GLOBAL ONE FINANCIAL,           *

       Plaintiff,               *

vs.                             *
                                       CASE NO. 4:23-CV-164 (CDL)
EQUITABLE HOLDINGS, INC., et    *
al.,
                                *
       Defendants.
                                *
_____ *
```

### O R D E R

Global One Financial alleges that Pinali Modi, Tejas Modi, Dinesh Patel, and Sadhana Patel entered premium-financed life insurance transactions under which their trusts borrowed funds from Global One to purchase life insurance policies from Equitable Holdings, Inc. Global One contends that the trusts failed to make the required payments on the loans. The policies were surrendered to Equitable. Global One alleges that the trusts still owe amounts under the loans and that the Modis and Patels are liable for those amounts because they personally guaranteed the loans. Global One brought actions against Equitable and the trusts/guarantors, which the Court consolidated.

The Patels and Modis ("Patel-Modi Complainants") assert counterclaims against Global One, crossclaims against Equitable, and third-party claims against two life insurance agents. The Patel-Modi Complainants allege that Global One, Equitable, and the

life insurance agents fraudulently induced them to enter the contracts at issue in this action, that Equitable never should have issued the policies to them, that the contracts are unenforceable, and that if the contracts are enforceable Equitable and Global One breached them.  Equitable filed a motion to dismiss the crossclaims against it.  For the reasons set forth below, the Court grants in part and denies in part that motion (ECF No. 70).

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556.  But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL BACKGROUND

The Patel-Modi Complainants allege the following facts, which the Court must accept as true in deciding Equitable's motion to dismiss the crossclaims.[1]  Dinesh and Sadhana Patel are a retired married couple who live in New Jersey.  In 2020, the Patels decided to purchase life insurance.  They met with Chader Goel, who was, according to the Patel-Modi Complainants, an actual agent of Equitable, as was his wife, Stephania Zois.  Although Goel's official appointment to Equitable was terminated before Equitable issued any policies to the Patels and Modis, Goel continued to hold himself out as Equitable's agent, and Equitable knowingly allowed Goel to continue soliciting and placing insurance policies using Zois's name.  Goel introduced the Patels to the concept of premium-financed life insurance and suggested that they finance two indexed universal life policies.  When the Patels expressed concern that the annual premiums were unaffordable, Goel told them that the premium-financed policies were appropriate for them and that they would only pay interest on the premium finance loan.

Over the next few months, Goel met and corresponded with the Patels and their daughter and son-in-law, Pinali and Tejas Modi, who also live in New Jersey, regarding the premium-financed life insurance plan.  Goel proposed that he would sell each of the

---

[1] The Court attempted to distill the 100-page Counterclaim/Crossclaim Complaint to the most significant material factual allegations.

Patels and Modis an annuity that would be used to show there were enough funds for collateral for premium finance loans, act as the agent to sell each insured a high-value indexed universal life policy (to be held by trusts), and negotiate with Global One to finance the premium payments with a fixed, low-rate loan.  Goel also represented that Global One would capitalize the interest payments so that there would be no out-of-pocket costs for the Patels and Modis, and that the life insurance policies and annuities would earn enough to cover the borrowing costs so that the insurance would essentially be free.  These representations were all false.  In reality, the insurance policies Goel proposed were not appropriate for the Patels and Modis because they had much higher premiums than Goel represented and the premiums could not be covered by the annuities he proposed.

Based on Goel's representations, the Patels and Modis decided to go ahead with Goel's premium-financed life insurance plan.  The Patel-Modi Complainants provided their financial information to Goel, who completed the paperwork for them with the help of his wife, Stefania Zois.  The Equitable insurance applications contained false income and net worth figures, falsely stated that no other entity would finance the policy (even though another section of the application listed a premium financing lender), falsely stated that no financial incentives or free insurance were discussed, contained no information disclosing how the policy face

amount was determined, falsely stated that no trust would be the owner or beneficiary of the policy (even though other statements in the application said that a trust would own the policy), lacked electronic signature verification, and contained other inconsistencies and irregularities. Zois signed one of the signature pages for each application, stating that she had witnessed the required applicant's signature on the fully completed part one, but that was false. The Patel-Modi Complainants assert that to the extent they signed any portion of the applications, they were provided only with a blank form or a signature page and did not know about or consent to the inclusion of false information in the insurance applications. Pinali Modi asked Goel more than once to see what he put on the blank applications they signed, but he did not send them the completed applications.

The Patels and Modis were not qualified for the policies that Goel placed for them. Equitable's internal guidelines required an insured to have a minimum net worth of $5,000,000.00 to finance premiums, which the Patels and Modis did not have, but Goel inflated the Patel-Modi Complainants' net worth so they could qualify for premium financing. Based on the Patel-Modi Complainants' actual annual income from their tax returns, the policies' annual premiums far exceeded the maximum allowed under industry guidelines, and the policies' death benefits exceeded the

maximum allowed under Equitable's internal guidelines. According to the Patel-Modi Complainants, a reasonable underwriter would have noticed and investigated numerous discrepancies and red flags in the applications and related materials and would have taken steps to verify the applicants' financial information. Based on that review, a reasonable underwriter easily could have discovered that the Patels and Modis could not afford the policies. There was no high risk underwriting review even though high value indexed universal life policies funded with premium financing are typically subject to heightened review, and Equitable issued the policies notwithstanding the red flags.

Equitable did not deliver a copy of the policies to the Patels and Modis, did not provide any signed life insurance policy illustration, and did not deliver a buyer's guide or policy summary to the Patels and Modis. The information Goel provided to the Patels and Modis significantly overstated the Year 1 cash surrender value, understated the interest rate, stated that the loan interest would be paid from an annuity (not cash) for the first two years, and did not disclose that additional collateral would be required. Official policy illustrations would have shown the true cash surrender value, interest rate, loan payoff date, and estimated additional collateral, as well as the expectation that the loan interest would be paid in cash (and not from an annuity).

As to the financing side of the transaction, the Patel-Modi Complainants allege that Goel had them sign a lot of documents without giving them time to review them or leaving them any copies of what they signed. They further allege that their purported signatures on some documents are forgeries. According to the Patel-Modi Complainants, they never saw or signed (1) promissory notes and security agreements in favor of Global One, (2) collateral assignment of life insurance policy to Global One, or (3) personal guaranties in favor of Global One.

After Equitable issued the policies, the Patels and Modis began receiving notices from Global One stating that additional collateral was due. Goel told them to send $63,000 to Global One, but he repeatedly assured them that they would get the money back and that no additional collateral was required. Nearly a year later, after Global One made a $250,000 premium payment to Equitable, Equitable refunded $69,379.23 directly to Dinesh Patel, who deposited it because he believed it was the refund that Goel had promised. When the Patels and Modis received another collateral due notice, Goel instructed them to pay the amount due but promised it would be resolved. When Global One made a $350,000 premium payment, Equitable refunded $93,357.46 to Dinesh Patel, who deposited it because he believed it was the promised refund. The Equitable policies were surrendered in December 2022.

DISCUSSION

The Patel-Modi Complainants assert claims against Equitable and Global One for breach of contract and breach of the covenant of good faith and fair dealing, as well as claims against Equitable, Global One, Goel, and Zois for "Negligence/Negligent Misrepresentation/Gross Negligence," fraud, fraudulent inducement, conversion, and violation of New Jersey's consumer fraud act. Am. Answer, Countercl., Cross-cl. & Third Party Claims 122 ¶¶ 346-351, ECF No. 65 ("Crossclaim"). Equitable filed a motion to dismiss all the crossclaims against it.

Equitable contends that the crossclaims are made in a shotgun pleading and that it cannot discern the basis for the crossclaims because each cause of action incorporates the prior 300+ paragraphs without stating which alleged facts fit the causes of action. The Court acknowledges that the most common type of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The Patel-Modi Defendants should not have rolled the allegations of each count into every successive count down the line. But dismissal on shotgun pleading grounds is only "appropriate where 'it is *virtually impossible* to know which allegations of fact are intended

to support which claim(s) for relief.'" *Id.* at 1325 (quoting *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996)). Although the Crossclaim is perhaps not as well organized as it could be, the Court finds that the counts are informative enough that it is not difficult to understand which factual allegations underly each count. Accordingly, the Court declines to dismiss the crossclaims as a shotgun pleading. The Court now turns to the merits of each claim.

## I.    Breach of Contract Claims

The Patel-Modi Complainants assert that any contracts between them and Equitable are void because they were fraudulently induced or are otherwise unenforceable. But they claim, in the alternative, that Equitable breached the terms of the insurance policies and the implied duty of good faith and fair dealing. As a preliminary matter, the parties disagree on whether New Jersey or Georgia law applies to the claims. Neither side pointed to a choice of law provision in the policies. In Georgia, if "a conflict-of-laws question arises in a contract action," Georgia courts apply "the traditional rule of *lex loci contractus,*" under which contracts are governed "by the by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case the laws of that sister State will be applied." *Mbatha v. Cutting*, 848 S.E.2d 920, 926 (Ga. Ct. App.

2020) (quoting *Convergys Corp. v. Keener*, 582 S.E.2d 84, 86 n.1 (Ga. 2003)). Here, the contracts between Equitable and the Patels and Modis were made in New Jersey.

There does not appear to be a conflict between New Jersey and Georgia law regarding the basic elements of a breach of contract claim. Under either New Jersey or Georgia law, a person asserting a breach of contract claim must point to a specific contractual provision that the defendant allegedly breached, and failure to do so may warrant dismissal of the claim. *Flaherty-Wiebel v. Morris, Downing & Sherred*, 384 F. App'x 173, 178 (3d Cir. 2010) (applying New Jersey law) (affirming dismissal of breach of contract claim because the plaintiff did not identify any specific contractual obligations that the defendant allegedly breached); *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358–59 (11th Cir. 2020) (applying Georgia law) (same).

Here, the breach of contract count alleges that Equitable and others "did not do what the contracts required each of them to do." Crossclaim 121 ¶ 338. The count for breach of the covenant of good faith and fair dealing asserts that Equitable "acted in bad faith, dishonestly, or with improper motive" with regard to the Patel-Modi Complainants' rights under the policies. *Id.* at 121 ¶ 344. In their response brief, the Patel-Modi Complainants minimally elaborated on these vague assertions by summarizing problems with the *formation* of the contracts that are alleged in

the Crossclaim.  But the only contract *performance* issue mentioned in the response brief is that Equitable honored collateral assignment agreements (even though the Patel-Modi Complainants allege they were forged) and sent the policy surrender values to Global One.  Patel-Modi Complainant Response Br. 13, ECF No. 75. This same performance issue is the only example in the Patel-Modi Complainants' brief of how Equitable breached the implied duty of good faith and fair dealing.  The Patel-Modi Complainants, though, did not clearly allege these facts in their Crossclaim.  They did not point to (and the Court could not find) any specific factual allegations in their Crossclaim regarding Equitable's obligations or actions upon surrender of the policies.[2]  The present Crossclaim thus does not contain sufficient factual allegations to state a breach of contract claim against Equitable or a claim for breach of the implied duty of good faith and fair dealing.  Equitable's motion to dismiss these claims is granted.

## II.  Negligence Claims

The Patel-Modi Complainants' next crossclaim against Equitable is for "Negligence/Negligent Misrepresentation/Gross Negligence."  They contend that Equitable, directly or through its

---

[2] In their conversion crossclaim, the Patel-Modi Complainants quote a portion of a policy provision on cash surrender value and allege that Equitable "unlawfully converted [the] policy cash values in direct violation of the policies."  Crossclaim 124 ¶ 361.  The Patel-Modi Complainants did not point to any factual allegations that set forth how Equitable violated the policies or converted the cash values.

agents, negligently misrepresented the material terms of the insurance policies and premium loan transactions. They further assert that Equitable was negligent with regard to the underwriting and issuance of the policies because a reasonable insurer would have undertaken more due diligence and would not have issued the policies as written.

Equitable argues that because all of the factual allegations in the Crossclaim were incorporated into the negligence count, it cannot understand the basis for the negligence or gross negligence claim at all. And, ignoring the Crossclaim's 300 factual allegation paragraphs, Equitable contends that the Patel-Modi Complainants did not plead facts to state a claim for negligent misrepresentation under Georgia law. The Patel-Modi Complainants argue that they allege ample facts to state their negligence claims, although their brief fails to reference any authority from New Jersey or Georgia regarding the elements of their negligence claims.

There does not appear to be a conflict between New Jersey law and Georgia law on the elements of a negligent misrepresentation claim.[3] In New Jersey, as in Georgia, the elements of a negligent

---

[3] If there were a conflict, New Jersey law would apply because Georgia courts follow "the doctrine of lex loci delicti in tort cases, pursuant to which a tort action is governed by the substantive law of the state where the tort was committed" unless a narrow public policy exception applies. *Auld v. Forbes*, 848 S.E.2d 876, 879-80 (Ga. 2020) (internal quotation marks omitted) (quoting *Bullard v. MRA Holding, LLC*, 740 S.E.2d 622, 625 (Ga. 2013)).

misrepresentation claim are: "(1) the defendant negligently made an incorrect statement; (2) the plaintiff justifiably relied on the defendant's statement; and (3) the plaintiff was injured as a consequence of relying upon that statement." *Pharmacy & Healthcare Commc'ns, L.L.C. v. Nat'l Cas. Co.*, No. A-0382-14T3, 2015 WL 10793944, at *4 (N.J. Super. Ct. App. Div. May 11, 2016) (per curiam). Here, the Patel-Modi Complainants allege that Goel was Equitable's agent and that he made incorrect statements to them about many material elements of the insurance policies, including the true costs for the policies, the true cash surrender value of the policies, estimated additional collateral, and how the premiums were expected to be paid.[4] The Patel-Modi Complainants further allege that they reasonably relied on these misrepresentations to their detriment by purchasing the policies, which they could not afford and which had to be surrendered, with the Patel-Modi Complainants ostensibly on the hook for thousands of dollars in loan repayments claimed by Global One. The Court is thus satisfied that the Patel-Modi Complainants allege enough facts to state a negligent misrepresentation claim against Goel.

---

[4] Equitable argues that Goel was not its agent because the Patel-Modi Complainants concede that his Equitable appointment was terminated before the Patel-Modi Complainants purchased the policies. But the Patel-Modi Complainants allege that Goel held himself out to them as Equitable's agent and that Equitable knowingly allowed Goel to continue soliciting and placing insurance policies on Equitable's behalf using Zois's name. At the present stage in the litigation, these allegations are adequate to establish that Goel was Equitable's agent. Whether the evidence supports these allegations is a question for another day.

As to the other negligence claim, it appears to the Court that the claim is in the nature of a "negligent underwriting" claim. The Patel-Modi Complainants assert that Equitable failed to verify the eligibility of the Patels and Modis for the policies, accepted inconsistent and incomplete documents from the Patels and Modis, failed to ask the Patels and Modis about missing and inconsistent information in their applications, failed to perform reasonable underwriting, and failed to deliver required product disclosures and policy documents. According to the Patel-Modi Complainants, there were significant red flags during underwriting that would have caused a reasonable underwriter to investigate further and then deny the insurance applications. Neither Equitable nor the Patel-Modi Complainants pointed the Court to any New Jersey or Georgia authority recognizing this type of claim or outlining the elements of such a claim. Equitable did not move to dismiss such a claim on the merits, though, so the Court declines to dismiss it at this time. The Patel-Modi Complainants are on notice that if they intend to pursue this claim, they must provide the Court with specific legal authority for it.

## III. Fraud Claims

In addition to their negligence claims, the Patel-Modi Complainants assert crossclaims against Equitable for fraud. Based on the Court's review of the Crossclaim, all of the Patel-Modi Complainants' fraud claims against Equitable, including those

under the New Jersey Consumer Fraud Act, are based on their assertion that they were fraudulently induced to purchase the Equitable insurance policies.  To the extent that the Patel-Modi Complainants intended to assert some other type of fraud claim against Equitable, it is not clear from the Crossclaim what the factual basis for that claim is, and the Court grants Equitable's motion to dismiss any fraud claims that are not based on fraudulent inducement.

As to the fraudulent inducement claim, Equitable argues that the Crossclaim's factual allegations are not specific enough to meet the pleading requirements of the Federal Rules of Civil Procedure.  But they are.  In New Jersey, as in Georgia, a fraudulent inducement claim has the following elements: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *Evonik Corp. v. Hercules Grp.*, No. CV167098JMVJBC, 2018 WL 5095991, at *8 (D.N.J. Oct. 18, 2018) (quoting *RNC Sys., Inc. v. Modern Tech. Grp.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012)).  Here, as discussed above, the Patel-Modi Complainants allege that Goel, as Equitable's agent, knowingly made false statements about many material elements of the insurance policies when he met and corresponded with the Patels and Modis in 2020 and 2021, and he concealed the true nature of the policies

from them.  They further assert that Goel made these false statements with the intention of inducing the Patels and Modis to enter the insurance purchase/premium finance loan transactions. Finally, the Patel-Modi Complainants allege that they reasonably relied on the false statements to their detriment; they would not have entered the transactions (and suffered harm that foreseeably resulted from them) if they knew the truth about them.  The Court finds that these allegations are sufficient to state a claim for fraudulent inducement against Equitable, so it denies Equitable's motion to dismiss that claim.[5]

## IV.  Conversion Claim

In addition to their other claims, the Patel-Modi Complainants assert a claim against Equitable for conversion.  In New Jersey, as in Georgia, conversion is "the intentional exercise of dominion or control over another's property, which is inconsistent with the owner's rights."  *Est. of Gimelstob v. Holmdel Fin. Servs. Inc.*, No. A-3341-18T3, 2021 WL 19220, at *12 (N.J. Super. Ct. App. Div. Jan. 4, 2021) (per curiam) (citing *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 431 (App. Div. 2011)).

---

[5] In Georgia, the remedy for a fraudulent inducement claim is either to rescind the contract as voidable or affirm the contract and sue for damages.  The parties did not point the Court to authority on the remedy under New Jersey law.  While the Patel-Modi Complainants' Crossclaim alleges that the contracts with Equitable are voidable, it is not clear from the present record what remedy they seek on this claim.  As this action progresses, the parties will need to nail down this issue.

And in New Jersey, as in Georgia, a conversion claim "will not be sustained in the context of" monies owed under a contract.  *Id.*

Here, the Patel-Modi Complainants did not point to any identifiable property that belongs to them and which Equitable exercised dominion or control over inconsistent with their rights. Rather, their conversion claim against Equitable is that "Equitable converted [the] policy cash values in direct violation of the policies."  Crossclaim 124 ¶ 361.[6]  So, the Patel-Modi Complainants assert that Equitable owed them money under a contract and failed to pay it.  These allegations cannot form the basis for a conversion claim under New Jersey or Georgia law.  Even if they could, the Patel-Modi Complainants did not point to any factual allegations about how Equitable exercised dominion over the funds in a way that was inconsistent with their rights.  For all these reasons, the conversion claim fails and is dismissed.

---

[6] The Patel-Modi Complainants also assert that Equitable misappropriated annuity and life insurance premiums and insurance policy death benefits. Crossclaim 37 ¶ 19.  The Patel-Modi Complainants did not point to any factual allegations regarding allegedly misappropriated annuity or life insurance premiums.  Based on the present allegations in the Crossclaim, the Court does not understand the Patel-Modi Complainants to be asserting a claim that Equitable converted funds from them by retaining premiums that Global One paid on their behalf; there are no clear factual allegations to support such a claim.  Regarding life insurance policy death benefits, any such benefits would be amounts due under an insurance policy in the event of the death of an insured; there is no allegation that such benefits were due or paid under the policy.

CONCLUSION

For the reasons set forth above, the Court grants Equitable's motion to dismiss the Patel-Modi Complainants' crossclaims for breach of contract, breach of implied covenant of good faith and fair dealing, fraud other than fraudulent inducement, and conversion (ECF No. 70). The motion is denied as to the negligence claims and the fraudulent inducement claims.

IT IS SO ORDERED, this 27th day of March, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA