IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

GLOBAL ONE FINANCIAL,            *
    Plaintiff,               *
vs.                              *      Case No. 4:23-cv-164
EQUITABLE HOLDINGS, INC., *et*   *
*al.*,                           *
    Defendants.              *
_____  *
GLOBAL ONE FINANCIAL,            *
    Plaintiff,               *
v.                               *      Case No. 4:24-cv-51
TEJAS MODI, Individually and     *
as Trustee of the Pinali Modi    *
Irrevocable Trust, *et al.*,     *
    Defendants.              *
_____  *

O R D E R

This action began as a relatively straight-forward breach of contract action in state court. Global One Financial ("Global One") sued Equitable Holdings, Inc. ("Equitable"), claiming that Equitable ignored its security interest in life insurance proceeds when Equitable paid unaccepted premiums that it had received from Global One to its insureds who had assigned the right to receive those proceeds to their lender, Global One. Equitable's removal of that action to this Court based upon diversity of citizenship unleashed a Federal Rules of Civil Procedure tsunami. That tsunami included motions to dismiss, a motion to add Equitable's insureds/Global One's borrowers as indispensable parties, cross-

1

claims and counterclaims by those added parties against Global One and Equitable, third-party claims by the added parties against alleged agents of Equitable and Global One, a motion to consolidate another similar action, and the presently pending summary judgment motions by Global One and Equitable.  These pending motions present the opportunity to clean up the mess.  After wading through the procedural debris, the Court found just two issues to be salvaged. Their resolution essentially disposes of the entire matter.

To decide the pending motions for summary judgment, the Court must answer the following fundamental questions using the Rule 56 standard:[1] (1) does the assignment of "all claims, options, privileges, rights, title and interest in the policies and proceeds" of the Equitable life insurance policy mean what it says? and (2) was Chander Goel Equitable's and/or Global One's agent? Because the answer to the first question is of course "yes," Global One's motion for summary judgment against Equitable (ECF No. 94) is granted in its entirety.  Because the answer to question 2 is "no," Global One's and Equitable's motions for summary judgment (ECF Nos. 94 & 96) as to all of the crossclaims and counterclaims asserted against them are granted.

---

[1] The resolution of the pending summary judgment motions does not require a unique interpretation of the Rule 56 standard, and thus, the Court finds the typical obligatory repetition of the standard, which seems to find its way into every district judge's summary judgment order, unnecessary here.  Suffice it to say, the Court knows the standard and applied it here.

The Court owes the parties (and the Court of Appeals) an explanation. In doing so, it hopes to avoid throwing more unnecessary debris on the pile.

DISCUSSION

## I.  <u>The Security Interest and Assignment</u>[2]

The Patel and Modi defendants[3] borrowed money from Global One to fund premiums for life insurance policies that they purchased from Equitable. They assigned their interest in those policies to Global One as collateral for the loans. Equitable was aware of the assignment and consented to it. Global One paid Equitable directly for the insurance premiums on behalf of Patel/Modi. When Patel/Modi defaulted on the Global One loans, Global One surrendered the life insurance policies to Equitable, and Equitable, consistent with the assignment, paid Global One the surrender value of the policies. Equitable, however, made payment to Patel/Modi for "unaccepted premiums" even though those premiums had been paid by Global One and notwithstanding Equitable's knowledge of the assignment. Global One seeks to recover those payments directly from Equitable.

The applicable law is uncomplicated. As the Court explained in its Order denying Equitable's motion to dismiss, Georgia law

---

[2] Unless otherwise noted, factual statements in this Order are not genuinely in dispute.

[3] The Court consolidated the two above captioned cases. Unless otherwise noted, the Patel and Modi Defendants, along with their respective trusts, are collectively referred to in this Order as "Patel/Modi."

authorizes the assignment of a life insurance policy through "an assignment executed by the policy owner . . . and delivered to the insurer." O.C.G.A. § 33-24-17. Equitable acknowledges that the collateral assignment agreements here allow Global One to step into Patel/Modi's shoes under the Equitable policies. Such an assignment "shall entitle the insurer to deal with the assignee as the owner or pledgee of the policy in accordance with the terms of the assignment[.]" *Id.* The Court finds that by confirming and recording the collateral assignments, Equitable assented to the assignments, acknowledged Global One as the owner of the policies, and agreed to deal with Global One as the owner of the policies. The Court further finds that Equitable accordingly acknowledged a duty under the policies to pay certain funds to Global One, not Patel/Modi, when such payment would have otherwise been due to Patel/Modi absent the assignment to Global One, which happened when Global One surrendered the policy. Equitable strains to distinguish the payment of surrender value from the payment of unaccepted premiums.

Before addressing that substantive issue, the Court does find that the assignment plus Equitable's affirming conduct places it in sufficient privity such that Global One may maintain a breach of contract claim against Equitable based on any breach of the assignment. The issue presented by Global One's pending motion is one of contract construction. What does the language in the

4

assignment mean?  Does it include a right to the "unaccepted premiums"?  The broadly worded assignment clearly contemplates that such right is covered by the assignment.  The insureds granted to Global One all claims, options, privileges, rights, title, and interest in the policies, except for certain specific rights that do not apply here.  Global One's rights include the sole right to collect and receive all distributions from the policies and the sole right to surrender the policies and receive their surrender values.  The assignments authorize Equitable to recognize Global One's rights based on the assignments; they state that checks for sums payable under the policies are to be drawn to Global One; and they state that premiums paid by Global One are part of the liabilities secured by the collateral assignment agreements. Equitable received the collateral assignment forms executed by its insureds, then sent Global One letters acknowledging the collateral assignments and stating that Equitable had recorded the collateral assignments.  A plain reading of the assignments makes clear that any right that the insureds would have to a return of unaccepted premiums was assigned to Global One, particularly when Global One made the payments as it did here.  Global One is entitled to summary judgment against Equitable for the amount Equitable paid to Patel/Modi that should have been paid to Global One plus pre-judgment interest.  It is undisputed that the principal amount is $162,736.70, which accrues interest pre-judgment at 7% per

annum, and summary judgment is accordingly granted in Global One's favor against Equitable.  Likewise, Equitable's motion for summary judgment as to Global One's breach of contract claim is denied.[4]

## II.  Claims Dependent Upon Agency of Chander Goel

In what can be described as a desperate attempt to avoid and/or delay payment on an undisputed loan obligation, Patel/Modi sued everyone associated with the transactions.  Notwithstanding their contrived legal theories, which took far too many words to communicate, their claims essentially depend on one preliminary fundamental issue: was Chander Goel an agent of Equitable and/or Global One?  Now that their mere allegations cannot be accepted as true and they have the burden of pointing to some evidence from which a reasonable jury could conclude that such agency relationships existed, they have come up empty.

No evidence has been presented to support the allegation that Goel was an "actual agent" of Equitable or Global One.  Patel/Modi rely on the theory of "apparent agency."  To support this theory, Patel/Modi must point to evidence from which a reasonable jury could conclude that (1) the appearance of authority was created by

---

[4] Since Global One's summary judgment on its breach of contract claim completely compensates it for its compensatory damages caused by Equitable, the Court finds it unnecessary to address Global One's conversion claim. The Court acknowledges that the conversion claim theoretically provides an avenue to punitive damages, a path the Court finds foreclosed by the lack of evidence supporting punitive damages in the present record. To the extent it's necessary, the Court grants Equitable's motion for summary judgment as to Global One's punitive damages claim against it.

the conduct of the alleged principal (Equitable and/or Global One) and not solely by proof of conduct by the alleged agent (Goel); (2) Patel/Modi must have relied on Goel's apparent authority to act for the principal (Equitable and/or Global One); and (3) the reliance must have been reasonable under the circumstances. *Gayles by Gayles v. Sky Zone Trampoline Park*, 254 A.3d 1271, 1275 (N.J. Super. Ct. App. Div. 2021); *accord Bresnahan v. Lighthouse Mission, Inc.*, 496 S.E.2d 351, 354 (Ga. Ct. App. 1998); *McGuire v. Radisson Hotels Int'l, Inc.*, 435 S.E.2d 51, 54 (Ga. Ct. App. 1993); *Holy Fellowship Church of God in Christ v. Brittain*, 523 S.E.2d 93, 95 (Ga. Ct. App. 1999); *Popham v. Landmark Am. Ins. Co.*, 798 S.E.2d 257, 262 (Ga. Ct. App. 2017).[5]  Patel/Modi has not pointed to sufficient evidence from which a reasonable jury could conclude that Goel was the apparent agent of either Equitable or Global One.

Equitable's Reply in Further Support of Its Motion for Summary Judgment On the Patel-Modi Complainants Crossclaims succinctly and persuasively explains why the present record does not support the contention that Goel was Equitable's agent.  And the Court finds no reason to add additional pages to this order to simply say that it agrees with Equitable's analysis.  No legal basis exists for

---

[5] Georgia and New Jersey law appear to be substantially the same on the agency issues presented by the pending motions, thus eliminating any choice of law complications.

7

holding Equitable liable for the actions of Goel.[6]  Because Patel/Modi's claims rest upon this essential element, those claims fail as a matter of law, and Equitable is entitled to summary judgment as to all of Patel/Modi's cross claims against it.

Patel/Modi's claims against Global One based on the conduct of Goel suffer the same fate.  Counsel for Patel/Modi make the bold proclamation in their summary judgment response brief: "To be clear, Global One permitted Goel to solicit premium finance loans with Global One Financial as the lender."  Defs.' Resp. to Pl.'s Mot. Summ. J. 8, ECF No. 109.  Then counsel proceeds for two and a half pages quoting the case law of "apparent agency."  But the Court could find no argument (or even explanation) as to how those legal principles authorize the Court to find a genuine factual dispute on the apparent agency issue based on the factual record in this case.  So the Court looked beyond the brief to Patel/Modi's response to Global One's statement of undisputed material facts, and this is what it found.

Global One stated: "Third-Party Defendant Chander Goel . . . who was not and is not employed by or an agent of Global One, was the independent agent who referred the loans to Global One.  Global One does not control Goel and he has never had power to act on

---

[6] Patel/Modi summarily alleged that Goel's wife, Stefania Zois, was also an agent of Equitable, but Patel/Modi failed to produce any evidence that she was substantively involved in the transactions giving rise to this litigation, and they certainly pointed to no evidence that she was an agent acting within the scope of that agency during the relevant transactions.

8

Global One's behalf; and Global One has never agreed to allow Goel to act on its behalf.  Nor has Global One made any representations to anyone that Goel can act on Global One's behalf.  Global One does not direct or compensate Goel in any way.  He is no way integrated with Global One's business and does not use any of Global One's company tools or work-sites.  He is not governed by any Global One policies."  Cross-Claimants' Resp. to Pl.'s Statement of Material Facts 4, ECF No. 109-1.

Patel/Modi responded by "disputing" this statement as follows:  "The Patel-Modi Parties understood Equitable and Global One to be the only life insurer and lender Goel told them were being used, and once the first Equitable life insurance policy issued with a Global One loan, the other three life insurance policies were all planned to also be with Equitable, and the loans with Global One.  The only lender ever discussed or disclosed by Goel was Synovus, aka Global One, which was also listed on each life insurance policy application as the premium finance lender. Further, Pinali Modi testified that she understood Chander Goel to be a representative of Global One.  Global One typically relies on the agent, to be the intermediary with the borrower.  That agent, here, was Goel.  Global One sent the materials to Goel, not the Patel-Modi Parties.  The Patel-Modi Parties did not see the Global One documents until Goel brought them to be signed.  While each of the Patel-Modi Parties 'could' have asked for more time to review

9

the documents from Global One, or the Patels 'could' have asked Pinali Modi to explain the documents to them, they all trusted Goel, who had seen all of their detailed financials and who they believed was looking out for them.  Goel told them they didn't need to read the Global One documents, and that they were simply standard forms, so the Patel-Modi Parties all signed wherever Goel asked them to [sign].  Goel then took the signed documents with him and did not leave the Patel-Modi Parties with copies." *Id.* at 4-5.

When Global One produced evidence that Goel was not its actual or apparent agent, Patel/Modi was required to point to "evidence" that created a genuine factual dispute on this issue.  They failed to do so.  The response above to Global One's statement of undisputed material facts makes this clear.  Conclusory statements by counsel are not evidence.  And vague "understandings" by the parties without some evidence to substantiate those "understandings" falls short.  To create a genuine factual dispute, circumstantial evidence (in the absence of direct evidence) must allow for a reasonable inference from the circumstances.  No such inference can be drawn here from the evidence in the present record.  Even if Goel "admitted" he was an agent of Global One, that standing alone would not be sufficient to create a jury question.  There must be some evidence that Global One's conduct contributed to the appearance that Goel was acting on its behalf.

Furthermore, any reliance by Patel/Modi on Goel's agency authority must have been reasonable.  Construing all inferences in favor of Patel/Modi, the present record suggests that Patel/Modi blindly relied upon Goel as their agent, not as the agent of Global One. They may have a claim against Goel, but they cannot impute Goel's conduct to Global One based on the present record.  Accordingly, Global One is entitled to summary judgment as to Patel/Modi's counterclaims against it.

### III.  Global One's Claims Against Patel/Modi

Having produced no evidence to support any legitimate legal theory to avoid their legal obligations to Global One and the amounts owed being undisputed, Patel/Modi are liable to Global One for the undisputed principal amounts due, plus prejudgment interest and attorney's fees pursuant to O.C.G.A. § 13-1-11. Summary judgment is granted in favor of Global One as described more specifically in the Summary at the conclusion of this order.

### IV.  Patel/Modi's Motion for Default Judgment Against Chander Goel and Stefania Zois

Patel/Modi asserted a third-party claim in this action against Chander Goel and his wife Stefania Zois based on their alleged fraudulent and tortious conduct related to the transactions that form the subject matter of this litigation.  When Goel and Zois failed to answer the Third-Party Complaint, the Clerk made an entry of default against them.  Clerk's Entry of Default

(July 7, 2025).  Patel/Modi subsequently filed a motion for default judgment with accompanying affidavits.  Cross-Claimants' Mot. Default J., ECF No. 92.  In light of the default, the material factual allegations in the Third-Party Complaint are deemed admitted.  As to damages, the Court may determine their amount based on affidavits if the amount is liquidated or capable of reasonable mathematical calculation.  Otherwise, an evidentiary hearing must be held.

The Court finds that no evidentiary hearing is necessary to reasonably calculate appropriate damages for the third-party complaint against Goel and Zois.  The Court grants the motion for default judgment as follows:[7]

1) Compensatory damages caused to the Patel/Modi parties by Goel and Zois's tortious conduct amount to $1,286,410.16, which amount shall be trebled under New Jersey law, resulting in total damages for the Patel/Modi parties in the amount of $3,859,230.48, for which Goel and Zois shall be jointly and severally liable;

2) The Patel/Modi parties are also entitled to recover from Goel and Zois pre-judgment interest in the amount of

---

[7] These default judgment findings are restricted to the parties to the default judgment and are not binding in any way that could be prejudicial to the non-defaulting parties.

$79,440.23, plus $246.71 per day from August 11, 2025, until judgment is entered;

3) Dinesh Patel is entitled to recover an additional $230,000.00 from Goel;

4) In light of the award of treble damages, the Court declines to award additional punitive damages;

5) Patel/Modi may seek reasonable attorney's fees and costs against Goel and Zois by filing a separate motion.

## V.   Summary

Global One's Motion for Summary Judgment (ECF No. 94) is granted as follows:

1) As to all claims asserted against it by any and all of the Defendants in case Nos. 4:23-cv-164 and 4:24-cv-51;

2) in case No. 4:23-cv-164, Global One shall recover $162,736.70 in damages, plus prejudgment interest accruing from February 14, 2023, jointly and severally, against Equitable, the Sadhana and Dinesh Patel Trusts and the Patels; and Global One shall recover $16,298.67 for attorneys' fees against the Sadhana and Dinesh Trusts and the Patels, jointly and severally, pursuant to O.C.G.A. § 13-1-11;

3) in case No. 4:24-cv-51, Global One shall recover $672,815.62, plus prejudgment contractual interest,

13

against the Pinali-Modi Trusts and the Patels and Modis, jointly and severally; and Global One shall recover $82,561.87 for attorneys' fees plus any additional attorneys' fees based on the interest that accrues since August 13, 2025, against Sadhana and Dinesh Trusts and the Patels, jointly and severally, pursuant to O.C.G.A. § 13-1-11.

Equitable's Motion for Summary Judgment (ECF No. 96) is granted in part and denied in part as follows:

1) Equitable is granted summary judgment as to any crossclaims asserted against it by any party, and as to Global One's punitive damages claim against it.

2) Equitable is denied summary judgment as to Global One's claims against it for which the Court granted summary judgment to Global One.

Patel/Modi's motion for default judgment (ECF No. 92) is granted to the extent previously described.

The following claims remain pending:

(1)  Global One's claim for attorney's fees against Equitable and Patel/Modi pursuant to O.C.G.A. § 13-6-11; and

(2)  Global One's conversion claim against Equitable and Patel/Modi (without the claim for punitive damages).

14

CONCLUSION

Within seven days of all claims being decided or otherwise resolved, the parties shall submit to the Court a jointly agreed upon final judgment consistent with today's order.  Upon receiving that jointly proposed final judgment, the Court will direct the Clerk to enter final judgment in this consolidated action.

IT IS SO ORDERED, this 20th day of March, 2026.

S/Clay D. Land
_____

CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA